IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CR-217-FL-4

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| KENDALE TYRONE STRANGE, ) | |
| a/k/a "Ghost" ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on defendant's motion to suppress certain evidence allegedly obtained in violation of the Fourth Amendment to the United States Constitution, (DE 101), defendant's motion to bifurcate trial, (DE 103), and defendant's motion for a bill of particulars, (DE 104). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), United States Magistrate Judge Robert T. Numbers, II, entered memorandum and recommendation ("M&R"), wherein it is recommended that defendant's motions be denied. (DE 146). Defendant timely objected to the M&R. In this posture, the issues raised are ripe for ruling. For the reasons that follow, defendant's motions are denied.

**STATEMENT OF THE CASE**

Indictment filed July 8, 2020, charges defendant with conspiracy to distribute and possess with intent to distribute a quantity of cocaine base (crack); one count of distribution of a quantity of cocaine base (crack); one count of possession with the intent to distribute a quantity of cocaine base (crack); and one count of possession of firearms by a convicted felon. Defendant filed the instant motions to bifurcate trial and for a bill of particulars on December 12, 2020. The same

day, defendant filed motion seeking suppression and exclusion of all evidence obtained March 18, 2020, pursuant to March 17, 2020, search warrant, and all evidence obtained pursuant to later-issued search warrant for his DNA. Defendant relies upon the application for the March 17, 2020, search warrant in support of his motion.

The government responded in opposition to all three motions on February 8, 2020. Following briefing on the motions, the court held evidentiary hearing on May 6, 2020, where it received testimony from defendant. The magistrate judge entered his M&R on May 16, 2020, and defendant timely objected.

## STATEMENT OF FACTS

The court incorporates herein for ease of reference the facts set forth in the M&R.

> Fayetteville Police Officers Newman and Maldonado applied for a warrant to search 522 School Street on March 17, 2020. . . .
>
> . . .
>
> In late February 2020, Fayetteville police officers received a report of a shooting. Through their investigation, officers learned that the victim had gotten into a verbal altercation with a person driving a Mercedes. The argument began outside a gas station convenience store but carried over into the parking lot of a nearby restaurant.
>
> Once in the parking lot, the Mercedes' driver got out of the car with a gun in his hand. The driver and the victim once again exchanged words. At some point the driver began to raise the gun and the victim turned his head. The victim "felt an impact on his head" and heard a gunshot. He thought he had been shot in the head. The driver fled the scene in the Mercedes.
>
> Newman obtained video footage from the gas station. He compared the footage to a photograph of Strange and concluded that Strange was the Mercedes' driver.
>
> . . .
>
> After discussing the assault investigation, the application reviewed Strange's criminal history. It revealed that between 1993 and 2013, Strange had been convicted of drug-related offenses 13 times. He had also been convicted of illegally possessing a firearm twice.

2

The affidavit then moved on to the investigation of 522 School Street, which began in April 2019. As part of the investigation, Maldonado and Detective Kurt Stein and met with a confidential informant. The informant, who had a record of being credible and reliable and had participated in controlled purchases, shared that Strange was selling crack and heroin from 522 School Street.

About four months later, in August 2020, law enforcement received an anonymous tip stating that Strange was selling drugs from a house on School Street that was set up as a car detailing body shop. The tipster also said that "crack heads" were always on School Street and around the house.

In January 2020, Fayetteville Police Officer Creech spoke with a woman in the front yard of 522 School Street. She said she was there to see "Ghost," which Creech knew to be Strange's nickname. While talking with the woman, Creech saw drug paraphernalia in her car. He searched the car and found two crack pipes, a spoon with burnt residue, needles, and a cotton ball. Creech "knew" that these items were drug paraphernalia. A field test revealed that the cotton ball had heroin on it.

As all this was going on, Strange left 522 School Street. But upon seeing law enforcement he went back inside.

In the month before the March 2020 warrant application, Maldonado conducted surveillance at 522 School Street. She saw Strange there "daily." She also noticed "frequent visitors" arrive at the house during the day on bicycles and foot. The visitors stayed for only a brief time. While at the house, the visitors would meet with Strange in the front yard or go inside. Maldonado believed that this conduct was consistent with someone selling drugs at the house.

During that same time, Maldonado met with a confidential source who knew various drug dealers. The source knew of a black male by the name of "Ghost" who sold crack and heroin on School Street. Id. at 8–9. After being shown a photo of Strange, the source confirmed that Strange was the person he knew as Ghost. Id. at 9.

Then, in the week before applying for the warrant, Maldonado used a confidential source to purchase crack from Strange. After being searched for contraband and being given money by law enforcement, the source went to 522 School Street. The source went inside, met with Strange, and bought crack from him. The entire transaction took about a minute.

The last piece of the investigation involved information from the Public Works Commission. In response to an inquiry from Maldonado, the Commission shared that it had an active account under Strange's name for 522 School Street.

. . .

Based on the application North Carolina Superior Court Judge Marry Ann Tally issued a warrant allowing officers to search 522 School Street. Along with

searching the property, they could also search Strange, anyone present on the property "that may possess the evidence sought within [the] affidavit[,]" cars found on the property, and any other cars "operated with keys found inside" 522 School Street. The warrant also authorized the seizure of 13 categories of items, including drugs, drug paraphernalia, weapons, money, and proof of ownership or control of the property.

Law enforcement executed the warrant the next day, March 18, 2020. In an upstairs bedroom they found Strange and a set of keys to a BMW. Also in the house were drugs, a gun, and mail addressed to Strange.

Officers learned that the BMW keys they found in the house unlocked a BMW sitting in the driveway of 522 School Street. A search of the car turned up a gun in its trunk.

. . .

After the search of the School Street property, Maldonado applied for a warrant to obtain a DNA sample from Strange. The application said that law enforcement had searched 522 School Street on "March 13, 2020" and found Strange and two firearms. It also noted that Strange had been convicted of possession of a firearm by a felon. According to the application, the DNA taken from Strange would be compared to any DNA collected from the guns. North Carolina Magistrate JC Stafford issued the warrant and officers obtained the DNA swabs from Strange.

(M&R (DE 146) at 2-5 (footnote and citation omitted)).

## COURT'S DISCUSSION

A.    Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or

4

modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B. Analysis

1. Motion for Bill of Particulars and to Bifurcate Trial

As to the M&R's recommendation that his motion to bifurcate trial between his felon-in-possession-of-a-firearm charge and his other charges and his motion for a bill of particulars be denied, defendant provides the following objections, respectively:

> The Defendant objects to the M&R's finding that the Defendant's trials should not be bifurcated, DE #146 at 16, 17. The Defendant objects to the finding that having trials for possession and distribution of drugs and possession of a firearm by a felon, in instances not related to one another, would not strongly prejudice the defendant. Having a jury hear these cases at the same time would most certainly strongly prejudice the Defendant.
>
> . . .
>
> The Defendant objects to the M&R's finding that the Government should not be required to provide a Bill of Particulars to the Defense.

(Def.'s Obj. (DE 147) at 4). Both objections are general, conclusory, and fail to direct to a discrete error in the M&R's reasoning.

Further, even on de novo review, the court finds the M&R's reasoning cogent and well-founded, specifically, its recommendations to deny defendant's motions for a bill of particular and to bifurcate trial. The Federal Rules of Criminal Procedure "permit[] very broad joinder at the pleading stage," allowing joinder of offenses that are "part of a common scheme or plan," see United States v. Cannady, 924 F.3d 94, 102 (4th Cir. 2019), which is met when the offenses are "unified by some substantial identity of facts or participants." United States v. Porter, 821 F.2d 968, 972 (4th Cir. 1987). Such is present here.

The court denies defendant's motion to bifurcate trial in two and his motion for a bill of particulars.

5

2. Motion to Suppress

In his M&R, the magistrate judge concluded 1) defendant had Fourth Amendment standing to challenge the search of 522 School Street but not the search of the BMW in front of the resident; 2) that the information in the application for the search warrant for 522 School Street was not stale; 3) that the application for the same search warrant permissibly relied on information from other officers; 4) that the application for the same search warrant permissibly relied on information from confidential informants and unnamed sources; 5) that Maldanado permissibly relied on her training and experience to conclude that the type of visits to 522 School Street she surveilled were consistent with drug trafficking; 6) that whether there was a nexus between the search of 522 School Street and the February 27, 2020, assault was immaterial; 7) that the warrant issued for search of 522 School Street was sufficiently particular; and 8) that the application for a search warrant for defendant's DNA's erroneous notation of the date for the 522 School Street search did not defeat probable cause for that warrant. Neither party objects to the magistrate judge's first, fifth, and eighth conclusions, and the court finds no clear error in those determinations.[1]

Defendant objects to the magistrate judge's conclusion that evidence seized as part of the execution of the 522 School Street search warrant was not excludable; specifically, 1) that the information on which probable cause was partly based was stale, particularly any information from April 2019, August 2019, and January 2020; 2) that information from unidentified sources could not contribute to probable cause; 3) that ambiguity exists as to when the relevant controlled purchase took place, which he purports would affect probable cause; 4) that information from other officers, which was also purportedly stale and from unidentified sources, could not contribute to probable cause; 5) that the application's proffer of a statement regarding "crack heads" failed to

---

[1] Defendant renews his already accepted assertion that his testimony at the suppression hearing cannot be used against him at trial. The M&R did not conclude otherwise, and the government does not challenge this assertion.

6

explain what a "crack head" is and that such information does not further probable cause; 6) that there is no nexus between 522 School Street and the alleged assault, which vitiates probable cause because the application relies primarily on the alleged assault; 7) that the 522 School Street search warrant does not meet the Fourth Amendment's particularity requirement; and 8) that the 522 School Street search warrant was overbroad. The court addresses each objection in turn, finding that none warrant rejecting the recommendation of the magistrate judge that defendant's motion to suppress be denied.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and requires that "no [w]arrants shall issue, but upon probable cause, . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The Fourth Amendment's exclusionary rule normally prevents the government from using evidence obtained as a result of an illegal search against the victim of that search." United States v. Bullette, 854 F.3d 261, 265 (4th Cir. 2017).

"Probable cause to search 'exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found' in a particular place." United States v. Doyle, 650 F.3d 460, 471 (4th Cir. 2011) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). Probable cause is evaluated based upon the totality of the circumstances. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Where a magistrate judge issued the challenged warrant, "[the court] ask[s] whether the magistrate judge had a 'substantial basis' for finding probable cause." United States v. Lyles, 910 F.3d 787, 791 (4th Cir. 2018) (quoting Gates, 462 U.S. at 238-39).

7

a. Staleness of Information

Defendant argues that the M&R erred in finding that the information in the affidavit filed in support of the application for the search warrant was not stale. Specifically, defendant asserts that any information from April 2019, August 2019, or January 2020 is incapable of supporting probable cause in March 2020.

"A valid search warrant may issue only upon allegations of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." United States v. Bosyk, 933 F.3d 319, 330 (4th Cir. 2019) (quotation omitted). This determination is not made "by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1984) (quotation omitted). Rather, the court "must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." Id. Accordingly, "[m]any courts have found probable cause to exist despite substantial gaps between the observation of the evidence at a particular premises and the issuance of a search warrant." Id.

For example, in United States v. Farmer, the United States Court of Appeals for the Fourth Circuit examined a staleness argument in reference to a defendant who had been "under investigation for trafficking in counterfeit clothing and money laundering." 370 F.3d 435, 439 (4th Cir. 2004). The court explained that this unlawful conduct constituted "not mere isolated violation of the law, but criminal activities of a protracted and continuous nature." Id. (quotation omitted). Accordingly, "[t]he ongoing nature of [defendant's] counterfeit clothing operation rendered the recency of the information in [the officer's] affidavit less crucial, and suggested that probable cause was not diminished solely by the passage of time." Id. (quotation omitted). The court

8

concluded that the information regarding the criminal operation at defendant's residence a year earlier was clearly relevant to probable cause a year later "to believe that evidence of [defendant's] counterfeit clothing operation would be located at his residence." Id. at 440.

Here, as in Farmer, defendant's "operation [was] unlikely to have been suddenly abandoned" and the relevant "affidavit attested that the operation had continued for quite some time." 370 F.3d at 439; see also, e.g., United States v. Rhynes, 196 F.3d 207, 234 (4th Cir. 1999) (noting "long-term drug trafficking" as relevant to the staleness analysis), opinion vacated in part on reh'g, 218 F.3d 310 (4th Cir. 2000) (en banc) (vacating portions of the previous opinion unrelated to staleness). The factual matter presented in the affidavit submitted in support of the application evidenced the ongoing nature of defendant's alleged drug trafficking operation. The affidavit proffers information regarding the alleged drug trafficking over the course of 2019 going into 2020 that would warrant an officer of reasonable prudence in the belief that evidence of drug trafficking would be found at 522 School Street in March 2020.

The M&R correctly determined that the information in the affidavit was not stale, and, accordingly, probable cause supporting the warrant is not defeated for that reason.

        b.        Unreliable Sources of Information

Defendant objects to the M&R's finding that probable cause could find any basis in information from other officers or information from unidentified sources.

As to defendant's objection regarding information originating from other officers, the M&R correctly rejected this argument. Defendant does not provide any authority contrary to that cited by the M&R. Specifically, "[o]bservations of fellow officers . . . engaged in a common investigation are plainly a reliable basis for a warrant," United States v. Ventresca, 380 U.S. 102,

9

111 (1965); and "an affiant . . . can base his information on information in turn supplied him . . . by fellow officers."  United States v. Welebir, 498 F.2d 346, 349 n.2 (4th Cir. 1974).

As to defendant's contention that unidentified or anonymous sources could not be relied upon for probable cause, this too fails.

The anonymity of a tipster does not, per se, make the associated tip unable to be used in making a probable cause determination.  See, e.g., Gates, 462 U.S. at 244-46.  Rather, the question is whether the information provided, judged in the totality of the circumstances including an informant's "veracity" or "reliability" and his "basis of knowledge," "suffices for the practical, common-sense judgment called for in making a probable cause determination."  See id. at 230, 244.  In particular, "[t]he corroborating aspects of an anonymous tip" may "establish[] the anonymous informant's reliability."  United States v. Gondres-Medrano, __ F.4th __, 2021 WL 2834563, at *5 (4th Cir. July 8, 2021); United States v. Wilhelm, 80 F.3d 116, 119 (4th Cir. 1996) ("[I]n evaluating whether an informant's tip establishes probable cause, the degree to which the report is corroborated is an important consideration.").

Here, the August 2019 anonymous tip stated, pertinent here, that (1) defendant was selling controlled substances from a residence on School Street and that (2) "crack heads" were always on School Street and around the residence.  Although the term "crack head" is plainly offensive, derogatory, and not endorsed by the court, the common sense undergirding any probable cause determination, see, e.g., Gates, 462 U.S. at 231 (explaining that probable cause relies on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act"), would counsel that such a term references users or addicts of cocaine base also known as "crack."  In January 2020, the tip was corroborated in part.  The affidavit relates that a Fayetteville Police Department officer engaged in a conversation with an individual, who

10

seemingly used cocaine base or "crack," outside of the 522 School Street residence. The individual conveyed that she had come to the residence to see "Ghost"; one of defendant's monikers as known to the officer and corroborated by other evidence submitted in the affidavit.

Given that the anonymous tip was substantially corroborated as to some of its details, Maldanado and Newman were justified in their reliance on the other portions of the anonymous tip — in light of the totality of the information in the supporting affidavit — in arriving at probable cause and applying for the search warrant. See Gondres-Medrano, 2021 WL 2834563, at *5 ("[W]here a tipster is shown to be right about some details, he is probably right about other alleged facts, including the alleged criminal activity, justifying reliance on the anonymous tip.").

While it is unclear if defendant's objection to information from unidentified sources extends to the confidential informant and source of information described in the affidavit, inclusion of such information permissibly factored into the probable cause analysis in this case. "[I]n considering the reliability of a known informant, the Supreme Court has repeatedly emphasized the import of an informant's track record of providing reliable information," and it is axiomatic that "probable cause can be based solely on information from a reliable, credible informant." Id. Here, Newman and Maldonado testified that the confidential informant had "been found to be credible and reliable and in the past . . . made numerous controlled purchases." (Newman & Maldonado Aff. (DE 118-1) at 7); see Draper v. United States, 358 U.S. 307, 313 (1959) (approving reliance on information from informant that testifying officer "had always . . . found accurate and reliable"). And they stated that the other confidential source of information gave material "about several drug traffickers in the downtown area," in addition to that regarding defendant, that the officers knew to be true. (Newman & Maldonado Aff. (DE 118-1) at 9); see Gondres-Medrano, 2021 WL 2834563, at *5 ("[C]orroboration can confirm the reliability of an

informant who is known (rather than anonymous) but whose credibility is unknown to the officer."). Defendant has not challenged either of these conclusions by the affiant-officers.

In sum, looking at the totality of the circumstances, the information given to the officers by third parties that was relied upon them in their application for the search warrant permissibly factored into the probable cause determination.

      c.      Ambiguity in the Controlled Purchase

Defendant argues that there is ambiguity as to when the controlled purchase at 522 School Street took place and that this ambiguity, in some undescribed fashion, affects probable cause. This presumably is a reference to the affidavit's attestation to the controlled purchase taking place "[w]ithin the last week" of the date of the affidavit. (See Newman & Maldonado Aff. (DE 118-1) at 7).

Although defendant does not expound on this argument further, the M&R rightfully rejected his reliance on the United States Court of Appeal for the D.C. Circuit's opinion in United States v. Washington, in which that court stated that "[f]uture affiants would therefore be well-advised to avoid temporal ambiguity in their description of drug transactions, particularly where only one sale is involved." 775 F.3d 405, 409 (D.C. Cir. 2014). The Washington court's statement was made in relation to its analysis of a staleness argument. Here, regardless of which date in the seven-day period leading up to the March 17, 2020, application that the controlled purchase took place, it plainly was not stale for temporal reasons. Therefore, the court concludes that any ambiguity regarding that controlled purchase as no effect on the probable cause analysis.

      d.      Inclusion in Affidavit of Information on Alleged Assault

Defendant objects to any finding that there is a relationship between the March 18, 2020, search of the 522 School Street residence and the alleged assault on February 27, 2020, asserting

12

that the ostensibly unrelated assault was only included in the affidavit in attempt to shore up the probable cause lacking from the other information in the affidavit. The court rejects this argument.

The fact that the investigating officers knew of a recent incident where defendant was suspected to have been involved in a violent incident with a firearm, which he was not permitted to own as a felon, could permissibly factor into the officer's probable cause analysis to search the address where defendant's residency and potential drug trafficking have been evidenced. Cf. United States v. Manigan, 592 F.3d 621, 629 (4th Cir. 2010) ("A handgun . . . has been deemed a tool of the drug trade because it is easy to conceal yet deadly." (quotation omitted)). Such evidence would, taken with the other facts and circumstances, induce a reasonably prudent person to believe that a search of that residence will uncover evidence of a crime, see Gates, 462 U.S. at 238, specifically, "possession of firearm by felon" as noted in the affidavit supporting the application for the warrant. (See Newman & Maldonado Aff. (DE 118-1) at 9). See generally United States v. Love, 59 F. App'x 165, 166 (8th Cir. 2003) ("The affidavit supporting the application for the search warrant . . . sets forth sufficient facts to create a fair probability that [defendant], a felon, possessed a handgun at his home.").

  e. Particularity

Defendant objects to the M&R's finding that the 522 School Street search warrant met the Fourth Amendment's particularity requirement, although he fails to identify any particular portions of the warrant that purportedly fail to meet this requirement.

"The Fourth Amendment . . . does not set forth some general 'particularity requirement.' It specifies only two matters that must be 'particularly describ[ed]' in the warrant: 'the place to be searched' and 'the persons or things to be seized.'" United States v. Grubbs, 547 U.S. 90, 97 (2006). "[W]hat 'particularity' demands . . . is that the executing officer reasonably can ascertain

and identify from the warrant the place to be searched and the items to be seized," and this is met "[s]o long as the warrant describes the items to be seized with enough specificity that the executing officer is able to distinguish between those items which are to be seized and those that are not." United States v. Blakeney, 949 F.3d 851, 861-62 (4th Cir. 2020) (quotation omitted). A search warrant meets this requirement even when it "uses generic terms (such as books, records, bank statements, etc.) without detailed descriptions," United States v. Shilling, 826 F.2d 1365, 1369 (4th Cir. 1987), abrogated on other grounds by Staples v. United States, 511 U.S. 600, (1994).

Here, the 522 School Street search warrant, incorporating by reference Newman and Maldonado's affidavit, is sufficiently particular. United States v. Hurwitz, 459 F.3d 463, 470 (4th Cir. 2006) ("The particularity requirement of the Fourth Amendment may be satisfied by cross-reference in the warrant to separate documents that identify the property in sufficient detail."). It describes the place to be searched as 522 School Street and the things to be searched as various discrete categories of items, constrained by their relation to underlying alleged crimes. Compare, e.g., United States v. Dargan, 738 F.3d 643, 648 (4th Cir. 2013) ("Indicia of occupancy, residency, of the premises . . . including but not limited to, utility and telephone bills, [and] canceled envelopes."), with (Newman & Maldonado Aff. (DE 118-1) at 10 ("Any items, which tend to show ownership, dominion[,] or control of the premises; to include but not limited to utility bills, phone bills, US. [sic] Mail documents.")). See generally Blakeney, 949 F.3d at 862 ("When it comes to particularity, we construe search warrants in a commonsense and realistic manner, avoiding a hypertechnical reading of their terms." (quotation omitted)). Accordingly, the evidence seized in executing the search warrant is not excludable for that reason.

    f.   Overbreadth

Defendant similarly argues that the warrant is overbroad because it listed for seizure:

any items that show ownership or control of the property, human biological material, trace evidence, photographs, documents, drawings, notes, letters, receipts, diaries, computers, thumb drives, CDs, DVDs, any media storage devices, medications, U.S. currency or items which may have been stolen or traded for controlled substances, cell phones, pagers, surveillance equipment and computers,

which he asserts "nowhere appear in the breadth of probable cause." (Def.'s Obj. (DE 147) at 4). Defendant's argument, once again, misses the mark, even assuming that overbreadth is anything other than the flip side of the same coin as the particularity requirement. See e.g., United States v. Oloyede, 982 F.2d 133, 138 (4th Cir. 1992) ("Th[e particularity] requirement ensures that the search is confined in scope to particularly described evidence relating to a specific crime for which there is probable cause." (emphasis added)).

"The Fourth Amendment requires that a warrant be no broader than the probable cause on which it is based." United States v. Hurwitz, 459 F.3d 463, 473 (4th Cir. 2006) (quotation omitted). "Relevance of materials subject to seizure in a search warrant to an alleged crime stated in the supporting affidavit is the pivotal factor." Oloyede, 982 F.2d at 141. For example, where "the types of [evidence] specified in the warrant [are] limited to those having some relation to the suspected criminal activity," the warrant is not overbroad. See id. at 139. In contrast, phrases like "[a]ny and all evidence of any other crimes" are "overbroad" but may be only "overbroad in isolation" and "easily and properly severed from the balance of the warrant which" may still be sufficiently particularized. United States v. Cobb, 970 F.3d 319, 331 (4th Cir. 2020).

Here, the scope of the warrant, although broad, was not broader than the probable cause upon which it was based. Compare United States v. Lyles, 910 F.3d 787, 795 (4th Cir. 2018) (condemning "astoundingly broad warrant" that "empowered the police to seize a host of things seemingly unconnected to marijuana possession" such as "any computers, toiletries, or jewelry"). The incorporated affidavit constrained the scope of the possibly

15

broad categories enumerated in the warrant through phrases of limitation referencing the underlying alleged crimes. The other categories of items either clearly related to the alleged crimes or were susceptible to the reasonable inference that evidence pertinent to the alleged crimes would be contained therein. Cf. United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993) ("[T]he nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence.").

For example, the warrant's broad allowance of seizure of "surveillance equipment" is constrained by the limiting clause "that is used to observe the property during the sale and delivery of controlled substances and provide protection of the controlled substances located at the property." (Newman & Maldonado Aff. (DE 118-1) at 10; see also id. ("U.S. Currency or items that may have been stolen or traded for controlled substances"; "Cellular telephones . . . to include the correspondence by electronic messages pertaining to the sale and distribution of controlled substances . . . .")). And items such as "weapons and ballistic evidence" and "drug paraphernalia" clearly are within the scope of probable cause based on suspected possession of a firearm by a felon and drug trafficking. (Id.).

Other items sought were reasonably inferred to have an evidentiary connection to the crimes for which there was probable cause. For example, "the human biological material" would be pertinent to the alleged crime of felon in possession of a firearm, when read in conjunction with the rest of the incorporated affidavit, which included assertions that a firearm had been used by a felon as a blunt weapon that left open wounds on a victim. Similarly, the documentary evidence sought — as well as firearms, cash, and communication devices, even if not constrained by limiting language — reasonably could

16

be pertinent to the crime of drug trafficking, especially an operation evidenced over the course of a year. See, e.g., United States v. Pettiford, No. 94–5391, 1995 WL 151863, at *4 (4th Cir. Apr. 7, 1995) (explaining that "[g]uns, electronic pagers and beepers, razor blades, and large sums of cash are recognized as 'tools of the trade' in the illegal drug trafficking industry" as well as "address books"). See generally United States v. Jones, 345 F. App'x 872, 876-77 (4th Cir. 2009) (noting applicant-detectives' common sense assertion that "drug dealers often store narcotics, weapons, proceeds, and records of their trafficking in their residences for safe keeping"); United States v. Peterson, No. 95-5407, 2000 WL 305147, at *2 (4th Cir. Mar. 24, 2000) (noting applicant-detectives' common-sense assertion that "drug traffickers frequently keep large amounts of cash, as well as books or records documenting their drug transactions, in their residences").

In sum, reviewing only the information actually and permissibly presented to the magistrate judge during the warrant application process, she had a substantial basis for finding probable cause for the warrant to issue. Additionally, the warrant that did issue suffered from no flaw that would justify exclusion of the evidence gained through the warrant's execution.

## CONCLUSION

Based on the foregoing, defendant's motions to suppress (DE 100), to bifurcate trial (DE 103), and for a bill of particulars (DE 104) are DENIED.

SO ORDERED, this the 28th day of July, 2021.

                                                                            LOUISE W. FLANAGAN
                                                                            United States District Judge